IN THE CIRCUIT COURT
FOR BALTIMORE COUNTY

**OSPREY CONSULTING I, INC.** )
d/b/a Centennial Surety Associates, Inc. )
251 Najoles Road, Suite H )
Millersville, MD 21108 )
)
and )
)
)
**MICHAEL SCHENDEL** )
251 Najoles Road, Suite H )
Millersville, MD 21108 )
)
Plaintiffs )
) Case No.: C-03-CV-19-003036
v. )
)
**WESTPORT INSURANCE** )
**CORPORATION** )
1200 Main Street, Suite 800 )
Kansas City, MO 64105 )
)
SERVE ON:  Maryland Insurance Admin. )
            200 St. Paul Place )
            Suite 2700 )
            Baltimore, MD 21202 )
)
Defendant. )

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND BREACH OF CONTRACT

Plaintiffs, Osprey Consulting I, Inc., d/b/a Centennial Surety Associates, Inc. ("Centennial"), and Michael Schendel, by and through their undersigned attorneys, hereby sue Defendant, Westport Insurance, Inc. ("Westport") and for reasons state:

1. This action includes a count for declaratory judgment pursuant to Maryland Code, Courts and Judicial Proceedings Article, § 3-401, *et seq.*, for purpose of determining a question of

actual controversy between the parties and terminating the uncertainty and controversy giving rise to this proceeding, as described more fully herein.

## PARTIES

2. Plaintiff Centennial is a Maryland corporation that maintains its principal place of business in Millersville, Anne Arundel County, Maryland.

3. Plaintiff, Michael Schendel, is an individual who serves as President of Centennial and is a resident of Anne Arundel County, Maryland.

4. Defendant, Westport, is an insurance company that upon information and belief is incorporated in Missouri, and that maintains its principal place of business in Kansas City, Missouri. Westport conducts business across the state of Maryland and across the country.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to MD CODE, CTS. & JUD. PROC. § 1-501. This Court has personal jurisdiction over the Defendant, who carries on a regular business in the State of Maryland. MD CODE, CTS. & JUD. PROC. §§ 6-102 and 6-103.

6. Venue in this Court is proper under MD CODE, CTS. & JUD. PROC. § 6-201(a) because, *inter alia*, the Defendant carries on a regular business in this County.

## FACTUAL ALLEGATIONS

7. Centennial is a bonding agency engaged principally in the business of writing construction bonds for contractors in the Mid-Atlantic region.

8. For its protection in rendering bonding services, Centennial maintains two insurance policies with Westport that are issue in this Action. The first is an insurance industry professional liability coverage for insurance agencies policy, policy number WED4MD005369009

(the "Primary Policy"), and the second policy is a commercial umbrella/excess liability policy, policy number WUM4US009880405 (the "Excess Policy")(together, the "Insurance Policies").

9. Under the Primary Policy, Westport agreed, subject to various terms and conditions, to indemnify Centennial for all damages and expenses that Centennial is liable to pay as a result of (1) Centennial's wrongful acts; and/or (2) third-parties' wrongful acts for which Centennial is legally liable. The Primary Policy liability limits are $2,000,000 per claim and $4,000,000 in the aggregate for the policy period. The Excess Policy limits are $4,000,000 per claim and $4,000,000 in the aggregate.

10. On August 6, 2014, while the Insurance Policies were in effect, Westport's insureds, Centennial and Schendel[1], were sued (along with multiple other defendants) in the United States District Court for the District of Washington, DC by Andrew Sollick, in a *qui tam* action filed on behalf of the United States of America.[2] *Scollick v. Narula et al.*, Case No.: 1:14-cv-01339-RCL (the "Qui Tam Action").

11. The complaint alleged that the defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* by submitting or assisting with the submission of false bids to the government for service-disabled veteran-owned small business contracts. The Complaint alleged that Centennial and Schendel assisted three of their co-defendants—CB Construction Group, Inc., Citibuilders Solutions Group, LLC, and CSG, LLC—with their fraudulent scheme by obtaining the bonding for the federal contracts when the entities at issue did not qualify for the contracts.

---

[1] Schendel is considered to be an "additional insured" under the Westport Insurance Policies.
[2] A *qui tam* action is a type of whistleblower lawsuit brought under the federal False Claims Act to recover funds for the government lost to fraud. The plaintiff in the underlying *qui tam* action, Scollick, is deemed the "relator" who brings the action on behalf of the United States government; the relator stands to receive a statutorily prescribed reward in successful cases.

The following counts were alleged against all of the defendants, including Centennial and Schendel:

    a) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(A), i.e., knowingly presenting or causing to be presented false or fraudulent claims for payment or approval by the Government (presentment claims);

    b) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(B), i.e., knowingly making or using false records to submit false or fraudulent claims for payment or approval to the Government (false statement claims);

    c) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(G), i.e., knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay established duties through the aforementioned violations (reverse false claims); and

    d) Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(C), i.e., conspiring to commit the violations of 31 U.S.C. § 3729(a)(1)(A), (B), and (G).

12. The scienter required for each cause of action at issue in this Action is that the defendant "knowingly" engaged in the alleged activity. The False Claims Act, 31 U.S.C. § 3729(b)(1)(A), defines "knowing" and "knowingly" to mean "that a person, with respect to information: (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in a reckless disregard of the truth or falsity of the information[.]"

13. With respect to the bonding issues[3], the Complaint alleged that all of the fraudulent bid proposals were dependent upon the issuance of surety bid bonds and performance bonds by

---

[3] The main thrust of the Complaint, as amended, is that various entities claiming to be service-disabled veteran-owned small businesses ("SDVOSB") did not qualify under the SDVOSB regulations and thus fraudulently bid for and

4

Centennial. The Complaint alleged that Centennial and Schendel knew that the companies' certifications were false when it was issuing the bonds and that the fraudulent activity could not have been carried out but for the issuance of the bonds.

14.  Upon being notified of the lawsuit, Centennial submitted a claim under the Insurance Policies, on behalf of itself and Schendel, and submitted a copy of the Complaint to Westport. By letter dated August 18, 2015, Westport agreed to provide a defense for Centennial and Schendel under the Policies under a reservation of rights.

15.  On October 20, 2015, Centennial and Schendel filed a motion to dismiss through their Westport-provided defense counsel, which motion was granted on September 30, 2016.

16.  On January 30, 2017, the plaintiff in the underlying action filed a Motion for Leave to Amend Complaint ("Motion to Amend"), attached to which was the proposed Amended Complaint. The Amended Complaint, which was formally entered into the record on August 11, 2017 following the court's granting of the Motion to Amend over the defendants' objections, included the same counts against Centennial and Schendel as did the original Complaint, with additional factual allegations.

17.  Throughout all of 2017 and 2018, while the litigation in the Qui Tam Action proceeded, including discovery, Westport did not communicate to its insureds, Centennial and Schendel, that the Amended Complaint in any way altered its decision to provide them with a defense.

18.  Without warning, by letter dated July 29, 2019 ("Denial Letter"), Westport notified Centennial and Schendel that it was denying coverage outright, including disclaiming any duty to continue to defend Centennial and Schendel in the Qui Tam Action. The Denial Letter stated that

---

obtained SDVOSB contracts for various construction projects. The allegations against Centennial and Schendel concern their role in obtaining the required bonding for the projects.

5

the defense fees and costs would be paid by Westport through the end of July 2019, effectively giving the Plaintiffs two days to make arrangements to obtain representation for their defense.

19.  The Primary Policy states that Westport "will pay on behalf of the INSURED all sums in excess of the DEDUCTIBLE that the INSURED becomes legally obligated to pay as DAMAGES caused by WRONGFUL ACTS resulting in any CLAIM first made against the INSURED during the POLICY PERIOD and reported in writing to [Westport] or the producing agent as soon as practicable."

20.  The Primary Policy defines "WRONGFUL ACT" as: "(1) any negligent act, error, or omission of an INSURED in rendering PROFESSIONAL SERVICES or OTHER RELATED SERVICES for others; or (2) any PERSONAL INJURY or ADVERTISING INJURY in rendering PROFESSIONAL SERVICES or OTHER RELATED SERVICES for others."

21.  Section (IV)(I) of the Primary Policy includes coverage for "PROFESSIONAL SERVICES," which includes "[a]ny actual or alleged WRONGFUL ACTS arising from the rendering of PROFESSIONAL SERVICES or OTHER RELATED SERVICES for which a license is required and committed while the INSURED'S license was suspended or revoked."

22.  Section (IV)(R) of the Primary Policy defines "PROFESSIONAL SERVICES," as relevant, as:

- a) services rendered as a managing general insurance agent, general insurance agent, insurance agent or insurance broker;
- b) services rendered as an insurance consultant, including, but not limited to, insurance consulting connected with employee benefit plans;

    c) premium financing services provided by the NAMED INSURED to the NAMED INSURED'S clients for insurance products placed through the NAMED INSURED'S agency; and

    d) loss control, risk management, or anti-fraud services rendered in connection with insurance placed through the NAMED INSURED.

23. The Primary Policy contains a "FRAUDULENT ENTITY" exclusion, which purports to exclude coverage for "any FRAUDULENT ENTITY or any entity that the Insured knew or, if industry standard due diligence had been performed, reasonably should have known is a legally formed entity that is used as a device to commit fraud or other unlawful acts." The endorsement also defines "FRAUDULENT ENTITY" as "an organization that does not have a legal identity or legal existence, but which is represented to legally exist."

24. Westport based its present denial of coverage on four (4) separate arguments: (i) no "WRONGFUL ACT" is alleged in the Amended Complaint; (ii) the Amended Complaint does not allege that the insureds were providing "PROFESSIONAL SERVICES"; (iii) application of the "FRAUDULENT ENTITY" exclusion; and (iv) the Amended Complaint does not allege any "personal and advertising injury" under the Excess Policy.

25. Plaintiffs' counsel wrote to Westport by letter dated and delivered August 1, 2019 in response to the Denial Letter, explaining why Westport's coverage analysis was incorrect and demanding that it reverse its decision and resume providing a defense to its insureds.

26. On August 8, 2019, Westport rejected Plaintiffs' demands and reaffirmed its decision to terminate coverage including a defense for its insureds, nearly 4 years after it first agreed to provide a defense for the Plaintiffs and 2 and ½ years after it was first on notice of the Amended Complaint.

## COUNT ONE – DECLARATORY JUDGMENT

27. The allegations set forth in paragraphs 1 through 26 above are incorporated by reference as if set forth herein in their entirety.

28. Centennial submitted a claim to Westport to provide it and Mr. Schendel with a defense in the Qui Tam Action pursuant to the terms of Centennial's Policies, which provide coverage for damages caused by wrongful acts resulting in any claim made against the insured, which includes its employees, during the policy period.

29. Section (II)(A) of the Primary Policy explicitly states that Westport has duty to defend Centennial.

30. From August 2014 until July 31, 2019, Westport provided Centennial and Schendel with a defense in the Qui Tam Action.

31. By letter dated July 29, 2019, Westport terminated the defense effective July 31, 2019 and disclaimed the potential for any coverage. The Denial Letter asserted four separate arguments for the denial of coverage, as mentioned above.

32. In response to the bases articulated by Westport in the Denial Letter for disclaiming coverage, Centennial and Schendel contend as follows:

  (a) coverage under the Primary Policy for "WRONGFUL ACTS" includes the False Claims Act allegations in the Amended Complaint inasmuch as the pleadings as well as the evidence generated to date via discovery demonstrate a potentiality that the plaintiff in the Qui Tam Action will prevail on the basis that Centennial and Schendel acted in "reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

  (b) the Amended Complaint is replete with references to professional services;

8

(c) the fraudulent entities exclusion does not apply because (i) there are no allegations in the Amended Complaint that any of the entities were represented to legally exist, but in fact do not legally exist; and (ii) Westport's own published materials establish that that exclusion is intended to apply in instances where insurance professionals place insurance with a fraudulent or undercapitalized company, i.e, it is inapplicable to the issues in the Qui Tam Action; and

(d) the Amended Complaint alleges a personal and advertising injury that falls within the scope of coverage under the Excess Policy.

33. Centennial and Schendel, therefore, contend that Westport has a duty to continue to defend Centennial and Schendel in the underlying Amended Complaint, and/or that Westport has waived and/or is estopped from disclaiming its duty to defend because it continued to provide a defense for 30 months after being on notice of the Amended Complaint and no other intervening event occurred (or was cited by Westport in its Denial Letter) during that time that played a role in Westport's coverage denial.

34. The litigation in the Qui Tam Action is ongoing, meaning that Plaintiffs are incurring damages for as long as they must pay for their defense out of pocket as opposed to having their defense costs covered (or reimbursed) under the terms of their contract(s) with Westport.

35. There exists an actual controversy of a practicable issue between Centennial and Westport within this Court's jurisdiction, which controversy may be determined by a judgment of this Court, involving whether (1) the allegations in the Amended Complaint trigger Westport's duty to defend Centennial and Schendel in the Qui Tam Action; and/or (2) Westport is estopped from disclaiming its duty to defend on the basis of the allegations in the Amended Complaint, which Westport had knowledge of for over two years prior to purporting to disavow its duty to

defend, and during which time it paid the defense costs for the Plaintiffs in the Qui Tam Action and otherwise honored its duty to defend.

WHEREFORE Plaintiffs Centennial and Schendel respectfully request that this Honorable Court issue a judgment: (1) declaring that Westport has a duty to defend (or is estopped form disclaiming its duty to defend) Centennial and Schendel in the action captioned *USA, ex rel. Andrew Sollick v. Narula, et al.*, D.C. Case No. 14-cv-01339-RCL, in the United States District Court of District of Columbia or any Court or tribunal with jurisdiction over the action pursuant to the terms of the Insurance Policies at issue; (2) ordering Westport to pay Centennial and Schendel their costs, expenses and attorneys' fees, in connection with the defense in the Qui Tam Action; (3) ordering Westport to pay Centennial and Schendel their costs, expenses and attorneys' fees, in connection with bringing the instant Action; and (4) any additional relief that justice may require.[4]

## COUNT TWO – BREACH OF CONTRACT

36. The allegations set forth in paragraphs 1 through 26 above are incorporated by reference as if set forth herein in their entirety.

37. Westport agreed to provide insurance coverage subject to the terms and conditions of the Insurance Policies exchange for Centennial's payment of insurance premiums.

38. Both of the Policies were effective on the date the allegations contained in the Amended Complaint allegedly occurred and remains effective to date.

39. Centennial paid all premiums and any and all conditions precedent have otherwise been performed or have occurred.

---

[4] Plaintiffs reserve all rights with respect to the Insurance Policies and Westport's duty to indemnify, however that issue is not ripe inasmuch as there has been no judgment or settlement in the Qui Tam Action.

10

40. The Primary Policy obligates Westport with the "duty to defend the insured against any 'CLAIM' first made against the INSURED during the POLICY PERIOD based upon alleged WRONGFUL ACTS of an INSURED."

41. The Amended Complaint includes allegations that the Plaintiff sustained damages arising from false claims presented to the federal government, which Centennial and Schendel allegedly *knowingly* facilitated. As alluded to above, the False Claims Act includes a definition of "knowingly" that encompasses unintentional (i.e., negligent) conduct.

42. Westport does not contend that Plaintiffs (i.e., Westport's insureds) have done anything to breach the parties' contracts or that they have otherwise undertaken any act that forfeits coverage under the Insurance Policies.

43. Westport's refusal to provide Centennial and Schendel with a legal defense under the Insurance Policies in the Qui Tam Action constitutes a material breach of its contractual duties pursuant to the terms and coverage of the Insurance Policies.

44. Centennial and Schendel have sustained damages as a result of Westport's breach of contract, including reasonable attorney's fees and costs associated with the pursuit of this instant Action and the defense of the Qui Tam Action.

WHEREFORE, Plaintiffs, Centennial and Schendel, respectfully requests that this Honorable Court enter judgment against the Defendant and in favor of Plaintiffs Centennial and Schendel for damages exceeding $75,000, plus costs and reasonable attorney's fees incurred in pursuit of this Action as well as any additional relief that justice may require.

### MD. RULE 2-703 Claim for Attorney's Fees Allowed by Law

This Action includes claims for attorneys' fees allowable by law. Pursuant to Md. Rule 2-703(c), Plaintiffs request that the court conduct the scheduling conference as set forth in the rule and otherwise implement the rule as intended.

Respectfully Submitted,

/s/ Jason C. Brino
Matthew G. Hjortsberg (CPF # 9612180047)
Jason C. Brino (CPF # 9412130085)
Bowie & Jensen LLC
210 West Pennsylvania Avenue
Suite 400
Towson, Maryland 21204
(Tel) 410-583-2400
(Fax) 410-583-2437
hjortsberg@bowie-jensen.com
brino@bowie-jensen.com

*Attorneys for Plaintiffs Centennial Surety Associates, Inc. and Michael Schendel*

### MD. RULE 2-325 Demand for Jury Trial

Pursuant to Md. Rule 2-325, Plaintiffs elect a trial by jury of all issues triable of right by a jury.

/s/ Jason C. Brino
Jason C. Brino

12

## CERTIFICATE OF COMPLIANCE WITH MARYLAND RULE 20-201(H)(2)

I hereby certify, that in accordance with Maryland Rule 20-201(h)(2), this filing does not contain restricted information.

/s/ Jason C. Brino
Jason C. Brino

## MD. RULE 2-112 REQUEST FOR SUMMONS

Pursuant to Md. Rule 2-112, Plaintiff requests that the Clerk issue a Writ of Summons for the Defendant in this action.

/s/ Jason C. Brino
Jason C. Brino