IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| OSPREY CONSULTING I, INC. d/b/a Centennial Surety Associates, Inc., *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. SAG-19-03092 |
| WESTPORT INSURANCE CORP., | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

On June 10, 2020, this Court issued an order granting Westport Insurance Corporation ("Westport") thirty days to file a motion for leave to file a counterclaim seeking a declaratory judgment against Osprey Consulting I, Inc. d/b/a Centennial Surety Associates, Inc. ("Centennial") and Michael Schendel ("Schendel") (collectively, "Plaintiffs"). ECF 31. In response, Westport timely filed its Motion for Leave to File Counterclaim Instanter on July 9, 2020. ECF 32. Plaintiffs filed an opposition, ECF 35, and Westport filed a reply, ECF 37. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). Westport's motion will be granted, and the Clerk will be directed to docket the Counterclaim.[1]

### I.        Background

This Court will dispense with a detailed statement of facts, while incorporating by reference the facts set out in its prior memorandum opinion in this case, ECF 30. Westport provides professional liability and commercial umbrella/excess liability insurance for Plaintiffs, pursuant to two insurance policies (collectively, "the Policy"). Plaintiffs filed the instant action

---

[1] Plaintiffs also filed a Motion for Attorneys' Fees, ECF 34, which is fully briefed and will be addressed separately.

on October 24, 2019, seeking 1) a declaratory judgment that Westport must provide them a defense in *Scollick v. Narula*, No. 1:14-cv-01339-RCL ("the *Scollick* Litigation"), 2) damages for Westport's alleged breach of the Policy, and 3) damages for Westport's alleged bad faith withdrawal of the defense. ECF 29, ¶¶ 36-71. Westport argued, in its own summary judgment motion and in response to Plaintiffs' motion for summary judgment, that it had the right to withdraw its defense in the *Scollick* Litigation unilaterally, without seeking a declaratory judgment from a court. ECF 23, ¶ 4. On June 10, 2020, this Court ruled in part in favor of Plaintiffs, granting their motion for partial summary judgment "as to liability for Count Two, because Westport breached its contract with Plaintiffs by withdrawing its defense without first seeking a declaratory judgment." ECF 30 at 21. This Court denied the remainder of the parties' cross-motions, thus declining to reach the ultimate issue of Westport's ongoing duty to defend or indemnify Plaintiffs, but granted Westport thirty days to file a motion for leave to file a counterclaim seeking a declaratory judgment, in order to allow the Court to address the merits of the coverage claim in the procedural posture allowed by the Policy. *Id.*

## II. Legal Analysis

The parties agree that Westport's proposed counterclaim is compulsory under Rule 13(a)(2). See ECF 35-1 at 7 ("Westport's Counterclaim is Compulsory."); ECF 37 at 2 ("Westport also does not dispute that its proposed counterclaim is compulsory under Rule 13(a)(2) because the counterclaim – as stated by Westport in its motion – involves the same facts and law as Centennial's declaratory judgment action."). The parties disagree, however, as to the import of the classification as a "compulsory counterclaim." Plaintiffs contend that the compulsory counterclaim was waived, because it was not asserted when Westport filed its answer, and because Westport cannot establish good cause for failing to file it at that time. Westport counters that the

2

liberal standard for amendment of pleadings, set forth in Federal Rule of Civil Procedure 15, governs this question and permits the belated filing. While following a slightly different analysis, this Court agrees with Westport's conclusion.

Compulsory counterclaims generally must be raised in the pleadings, or be forfeited. Fed. R. Civ. P. 13(a)(1). Former Federal Rule of Civil Procedure 13(f) expressly discussed the amendment of a pleading to add a counterclaim that was not raised at the time of the original filing. However, in 2009, Rule 13(f) was deleted, and the advisory committee provided the following note:

> Rule 13(f) is deleted as largely redundant and potentially misleading. An amendment to add a counterclaim will be governed by Rule 15. Rule 15(a)(1) permits some amendments to be made as a matter of course or with the opposing party's written consent. When the court's leave is required, the reasons described in Rule 13(f) for permitting amendment of a pleading to add an omitted counterclaim sound different from the general amendment standard in Rule 15(a)(2), but seem to be administered – as they should be – according to the same standard directing that leave should be freely given when justice so requires.

Fed. R. Civ. P. 13 advisory committee's note to 2009 amendment. Consistent with that later-expressed sentiment, the Fourth Circuit has ruled that "leave to amend to include compulsory counterclaims . . . should be granted freely." *Barnes Grp. Inc. v. C&C Prods., Inc.*, 716 F.2d 1023, 1035 n. 35 (4th Cir. 1983).

In this case, though, before turning to the Rule 15 standards for amendment, the Court must consider the tension between two applicable Federal Rules of Civil Procedure. Although Rule 15(a)(2) advocates that the Court should "freely" give leave to amend, Rule 16(b)(4) dictates that a scheduling order set by the Court "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298

(4th Cir. 2008). Here, the scheduling order set December 19, 2019 as the deadline for "[m]oving for joinder of additional parties and amendment of pleadings." ECF 14.

In *Nourison*, like in the instant case, a party sought amendment of its pleading after the expiration of the deadline in the scheduling order. *Id.* at 297. The Fourth Circuit noted that, "Given their heavy case loads, district courts require the effective case management tools provided by Rule 16." *Id.* at 298. Accordingly, the Fourth Circuit explained that the party seeking to modify the scheduling order must meet the good cause requirement of Rule 16(b)(4), before the Court can consider the traditional standard for amendment of a pleading in Rule 15(a)(2). *Id.* ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."); *see also Cook v. Howard*, 484 F. App'x. 805, 814-15 (4th Cir. 2012) ("[U]nder Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment."). To establish good cause, the party seeking to amend the scheduling order must "'show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Cook*, 484 F. App'x at 815 (alteration in original) (quoting 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1522.2 (3d ed. 2010)).

Here, Westport seeks to amend to add its Counterclaim roughly seven months after the deadline set in the scheduling order. Indisputably, Westport was aware of the facts underlying its declaratory judgment action at the time it filed its answer. In fact, this lawsuit focused, in large part, on the question of whether Westport permissibly withdrew its defense in the *Scollick* Litigation without first filing a declaratory judgment action. Westport's decision not to file a

declaratory judgment counterclaim at the outset of the litigation, then, can only be described as a strategic choice: an insurer asking a court to rule that it is entitled to withdraw a defense *without* seeking authorization to do so through a declaratory judgment action could not logically file and maintain a counterclaim seeking the same declaratory judgment.

Under the "good cause" standard for modifying a scheduling order, courts focus on the movant's diligence. In *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372 (D. Md. 2002), the Court specified:

> The primary consideration of the Rule 16(b) "good cause" standard is the diligence of the movant. Lack of diligence and carelessness are "hallmarks of failure to meet the good cause standard." "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end."

*Id.* at 374 (alteration in original) (citation omitted) (first quoting *West Virginia Housing Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001); and then quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995)). Here, Westport's failure to file its declaratory judgment action in accordance with the Court's scheduling order did not result from lack of diligence or carelessness, but from its desire to obtain a Court ruling as to whether a declaratory judgment was required. Once the Court ruled against Westport's legal position, Westport timely sought leave to amend to add its counterclaim. On these facts, this Court finds "good cause" as required by Rule 16(b), because a party should not be penalized for diligently espousing a viable, though ultimately unsuccessful, legal position.

Next, then, the Court turns to the standard for a party seeking leave to amend a pleading, which, as described above, also applies to the belated assertion of a compulsory counterclaim in the first instance. Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's

written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (footnote omitted) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012) ("Delay alone . . . is an insufficient reason . . . ."). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc).

Plaintiffs cite this Court's decision in *Casero v. McNulty*, Civil No. SAG-17-2205, 2019 WL 5309601 (D. Md. Oct. 21, 2019), for the proposition that granting leave to file a counterclaim in this case would be inappropriate. ECF 35-1 at 10. That case is readily distinguishable. At the time this Court was considering whether leave to file a counterclaim might be appropriate in *Casero*, the federal litigation between the parties had been ongoing for nearly three years, and a prior United States District Judge had already denied a motion to file the same counterclaim. *Id.* at *7. Here, this case has been pending for less than one year, and Westport has not previously sought leave to file its counterclaim, for the deliberate reason described above.

Turning to the three factors that can justify denial of leave to amend a pleading, prejudice is "[p]erhaps the most important factor" to consider. *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. SAG-16-3431, 2018 WL 5785664, at *3 (D. Md. Nov. 5, 2018) (quoting Wright, Miller & Kane, *supra*, § 1487). Prejudice is "often . . . determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427. An amendment can cause undue prejudice when it "raises a new legal theory that would require the gathering and analysis of facts not already

6

considered by the opposing party [and] . . . the amendment is offered shortly before or during trial." *Johnson*, 785 F.2d at 510.  Conversely, a proposed amendment carries little prejudice "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

The instant case falls somewhere between the two examples.  Discovery is concluded, and summary judgment motions are pending.  However, no gathering and analysis of additional facts will be needed to address the proposed counterclaim.  The declaratory judgment action simply requests a formal declaration of the position Westport has taken all along in its defense against Plaintiffs' claims: that coverage is unavailable under the Policy's terms.  Thus, no prejudice will accrue to Plaintiffs from the belated filing.  As discussed above, Westport did not delay seeking declaratory relief in bad faith, and its position on the coverage issue cannot be viewed as futile.  Thus, despite Westport's undeniable delay in asserting its counterclaim, none of the three bases for denying leave to amend are present here.

Finally, Plaintiffs allege that leave to file the counterclaim should be denied on the grounds of waiver, estoppel, or laches.  As noted above, although the motion for leave to file a counterclaim is submitted roughly seven months after it was permitted under the scheduling order, it causes no prejudice to Plaintiffs because the substance of the declaratory judgment counterclaim has been part of this litigation since its inception.  Plaintiffs have raised the issues of whether Westport's failure to seek a declaratory judgment before terminating coverage "waived its substantive right to terminate the defense of the Insureds," ECF 35-1 at 11, and whether Westport should be estopped from seeking a declaratory judgment several years after its defense in the *Scollick* Litigation

commenced.  *Id.* at 15-19.  Those questions are appropriately considered in connection with Plaintiffs' summary judgment motion, not in the context of this motion seeking leave to amend.

**III.     Conclusion**

For the reasons set forth above, Westport's Motion for Leave to File a Counterclaim Instanter, ECF 32, will be GRANTED.  A separate Order follows, which will include information about a scheduling conference to discuss the appropriate next steps in this litigation.


Dated: August 31, 2020                                    _____/s/_____
                                                          Stephanie A. Gallagher
                                                          United States District Judge